# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREENTREE PROPERTIES CORPORATION, and RANLUD ASSOCIATES, LLC, | : : : : | CIVIL ACTION |
| Plaintiff, | : : | |
| v. | : : | No. 20-4646 |
| ASPEN SPECIALTY INSURANCE COMPANY, | : : : | |
| Defendant. | : | |

## MEMORANDUM OPINION

**Timothy R. Rice**  June 11, 2021
**U.S. Magistrate Judge**

Plaintiffs Greentree Properties and Ranlud Associates (collectively "Ranlud") claim breach of contract and bad faith against Aspen Insurance Company for refusing to cover damages caused by a fire. Compl. (doc. 1). The dispute centers on coverage for improvements to the building made by Ranlud's tenant, The Chevra. Ranlud seeks summary judgment, claiming it has an insurable interest in those improvements, see Pl. Ins. Int. S.J. Mot. (doc. 13), and that Aspen acted in bad faith see Pl. Bad Faith S.J. Mot. (doc. 32). Aspen cross-moves for summary judgment on bad faith. See Def. S.J. Mot. (doc. 34). Because Ranlud had an expectation of benefit from the improvements, I grant its motion for summary judgment on insurable interest, Van Cure v. Hartford Fire Ins. Co., 253 A.2d 663, 665 (Pa. 1969), and I grant Aspen's cross-motion for summary judgment because it offered a reasonable basis for its denial of coverage. Post v. St. Paul Travelers Ins. Co., 691 F.3d 500, 524 (3d Cir. 2012).

**I.      Legal Standard**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The

evidence and any inferences from the evidence must be viewed in the light most favorable to the non-moving party.  See Ray v. Warren, 626 F.2d 170, 173 (3d Cir. 2010).  If reasonable minds could conclude that there are sufficient facts to support a non-movant's claims, summary judgment should be denied.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  It should be granted if no "reasonable jury could return a verdict for the nonmoving party" based on the evidentiary record.  Reedy v. Evanson, 615 F.3d 197, 210 (3d Cir. 2010).

## II.   Background

The dispute arises from a February 12, 2019 fire at 2002 Ludlow Street in Philadelphia (the "Building").[1]  Compl. ¶ 3; Answer (doc. 7) ¶ 3.  Ranlud owned the Building, and leased it to three tenants including Chevra, a non-profit, which then made substantial improvements that were damaged in the fire.  Compl. ¶ 4; Pl. Ins. Int. SOF ¶ 1; Def. Ins. Int. SOF ¶ 1.

*Aspen's Commercial Property Insurance Policy (the "Policy") and Denial of Coverage*

Aspen's Policy insured Ranlud "against all risk of direct physical loss or damages to the insured property."  Compl., Ex. 1, Policy at 2-3.  Insured property included "all real and business personal property" that Ranlud owned or in which Ranlud "had an insurable interest."  Id.  After the fire, Aspen investigated the loss and made partial payment for the damages.  Levin Dec. (doc. 32), Ex. 8, Garlena Dep. at 54:19-55-16; Levin Dec., Ex. 6, 5/13/19 Status Report at 7-10.  On March 30, 2020, however, Aspen sent Ranlud a letter denying coverage "for any loss or damage to [Chevra's] improvements and betterments on the grounds that such improvements and betterments were not owned by [Ranlud] at the time of the loss and also that [Ranlud] did not have an insurable interest in the improvements and betterments at the time of the loss."  Urgo Dec. (doc. 33), Ex. 8, Declination Letter at 8.

---

[1] The Building is also known as 2007 Ranstead Street.  Lease, Compl., Ex. 2 at 1.

*The Lease*

On June 8, 2012, Ranlud entered into the Lease with Chevra for the Premises, defined as the Building, "the fixtures and equipment attached to or located within the Building and owned by [Ranlud], and the tracts of land on which the Building is situate." Levin Dec., Ex. 1, Lease § 2.1. The "Lease Term" would extend and continue for 10 years, "unless sooner terminated in accordance with the provisions of the Lease." Id. at § 2.2.

Chevra agreed to complete renovations to the Premises at its expense. Id. at § 3.2. Any improvements completed by Chevra or Ranlud would remain Chevra's property for the Lease Term but would "immediately upon the termination of this Lease become [Ranlud's] property." Id. at § 10.1.

Ranlud was to obtain fire and other insurance on the Premises as it "deem[ed] desirable" and Chevra would pay to Ranlud "as additional rent, all insurance premiums applicable to the Lease Term for insurance maintained by [Ranlud]." Id. at § 11.1.

In the event of fire damage amounting to less than 10% of the cost of replacement of the Premises, the Lease required Ranlud to repair the damage at its own expense, provided that Ranlud "shall not be obligated to expend for such repair an amount in excess of the net insurance proceeds recovered as a result of such damage." Id. at § 15.1. Ranlud was not "required to repair or replace [Chevra's] stock in trade, fixtures, furnishings, floor coverings, and equipment." Id.

### III. Legal Analysis

    A. Insurable Interest

The sole issue is whether Ranlud had an insurable interest in Chevra's fire-damaged improvements. A party has an insurable interest when it "derives pecuniary benefit or advantage

from preservation or continued existence of property, or [ ] will suffer pecuniary loss from its destruction."[2] Luchansky v. Farmers Fire Ins. Co., 515 A.2d 598, 599 (Pa. Super. 1986). "A reasonable expectation of benefit from preservation of property" suffices as an insurable interest. Id. For an insurable interest to arise, the event insured against does not need to subject the insured to loss, because "it is sufficient that it might do so, and that pecuniary injury would be the natural consequence." Id. (quoting 43 Am. Jur. 2d Insurance § 943); Van Cure, 253 A.2d at 665.

Although Ranlud must prove an insurable interest in destroyed property before recovering under the Policy, Seals, Inc. v. Tioga County Grange Mut. Ins. Co., 519 A.2d 951, 957 (Pa. Super. 1986), a factfinder generally determines insurable interest. Alberici v. Safeguard Mut. Ins. Co., 664 A.2d 110, 113 (Pa. Super. 1995). Nevertheless, I can resolve the question on summary judgment if there is no genuine issue of material fact. See Iehle v. Coleman, 584 A.2d 988 (Pa. Super. 1991) (upholding insurable interest as a matter of law when no material facts were in dispute).

Ranlud contends the Policy and the Lease establish that it had a reasonable expectation of benefit from the improvements' preservation.[3] Pl. Ins. Int. S.J. Mot. at 13-17. Aspen disagrees, claiming genuine issues of material fact remain. Def. Ins. Int. Resp. at 11-12. I agree with Ranlud.

The parties do not dispute that the Policy covers all property in which Ranlud had an insurable interest. Policy at 2-3. The Lease states that Chevra owns the improvements for the

---

[2] The parties agree that Pennsylvania law applies to this dispute. Pl. Ins. Int. S.J. Mot. at 3, 11; Def. Ins. Int. Resp. (doc. 18) at 11-18.

[3] Ranlud also alleges it has an insurable interest because the Lease required it to repair the improvements. See Pl. Ins. Int. S.J. Mot. at 14-16. Because I find that Ranlud has an insurable interest through an expectation of benefit, I need not resolve this issue.

Lease Term, but when the Lease terminates in 2022, the improvements become Ranlud's property.  Lease at § 10.1.  Nothing in the Lease allows for renewal or extension of the term.  Only I can interpret the meaning of the Policy and the Lease.  Humberston v. Chevron U.S.A., Inc., 75 A.3d 504, 509-10 (Pa. Super. 2013) ("The task of interpreting a contract is generally performed by a court rather than a jury. The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument") (quoting Maguire v. Ohio Casualty Ins. Co., 602 A.2d 893, 894 (Pa. Super. 1992)).  Based on the clear and unambiguous language in the Lease that guaranteed Ranlud a reversionary interest in the improvements upon the Lease Term's termination, Ranlud had an expectation of benefit in the improvements.  See Washtenaw Shopping Center Investment Company v. Commerce & Industry Insurance Co., No. 83-1696, 1986 WL 16359, at *1-2 (6th Cir. 1986) (finding a commercial landlord had an insurable interest in its tenant's improvements to its building because the lease "gave the landlord a reversionary interest in all additions and improvements" upon termination of the Lease); R&R Realty Co. of Hamilton v. Neff, No. 82-05-0055, 1983 WL 4439, at *2-3 (Ohio Ct. App. Aug. 10, 1983) (recognizing landlord's insurable interest in tenant's improvements to fixtures when "according to law and the lease, the fixtures were to become the [landlord's] property upon the termination of the lease").

Aspen cites the sworn examination of Leon Vinokur, a Ranlud and Chevra employee, who testified that Ranlud bought the Building specifically for Chevra's use.  Urgo Dec., Ex. A, Vinokur EUO at 56:22-57:24.  Ranlud argues that "[i]t strains credulity that Plaintiffs would specifically look for a building just for the Chevra, allow the Chevra to spend $1.5 million to renovate the Building, allegedly in exchange for minimal rent, just to kick them out at the end of the Lease in 2021 to reap the benefits that a charitable organization invested in the Building."

5

Def. Ins. Int. Resp. at 22. Those circumstances do not prevent me from resolving the issue of whether an insurable interest exists.

The language of the Lease is unimpeachable and determines the existence of an insurable interest. Parties to a written contract express their intentions "in the writing itself." Baldwin v. University of Pittsburgh Medical Center, 636 F.3d 69, 76 (3d Cir. 2011). When the contract's terms "clearly manifest the parties' intent, a court need not 'resort to extrinsic aids or evidence.'" Id. (quoting American Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 587 (3d Cir. 2009)). Because Ranlud and Chevra "deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement." Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 497 (Pa. 2004) (citing Gianni v. Russell & Co., 126 A. 791, 792 (Pa. 1924)).

B. Bad Faith

An insurer acts in bad faith if it had no reasonable basis for denying benefits under the policy; and it knew or recklessly disregarded the lack of reasonable basis for denying the claim. Klinger v. State Farm Mut. Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997) (applying Pennsylvania law). Bad faith does not require fraudulent conduct or ill will. Rather, "any frivolous or unfounded refusal to pay proceeds of a policy" can constitute bad faith. Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1994). "Mere negligence or bad judgment" by an insurer fails to establish bad faith. Id. Bad faith consists of a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with the insured. Coyne v. Allstate Ins. Co., 771 F. Supp. 673, 678 (E.D. Pa. 1991).

Ranlud must establish bad faith by clear and convincing evidence. J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 367 (3d Cir. 2004). This requires "that the evidence is so clear,

direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." Id. (quoting Bostick v. ITT Hartford Group, Inc., 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999)); see also Williams v. Hartford Cas. Ins. Co., 83 F. Supp. 2d 567, 571 (E.D. Pa. 2000) (insured must demonstrate that "a jury could find by 'the stringent level of clear and convincing evidence' that the insurer lacked a reasonable basis for its handling of the claim and that it recklessly disregarded its unreasonableness.") (quoting Jung v. Nationwide Mut. Fire Ins. Co., 949 F. Supp. 353, 356 (E.D. Pa. 1997)). To overcome a bad faith claim, Aspen merely must present "a reasonable basis" for denying benefits under the policy. J.C. Penney, 393 F.3d at 367; Post v. St. Paul Travelers Ins. Co., 609 F. Supp. 2d 382, 385 (E.D. Pa. 2009) ("under Pennsylvania law, questionable conduct giving the appearance of bad faith is not sufficient to establish a bad faith refusal to provide coverage if the insurer had a reasonable basis for denying the claim"). It also may show "it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action." Krisa v. Equitable Life Assur. Soc., 113 F. Supp. 2d 694, 704 (M.D. Pa. 2000) (quoting Cantor v. The Equitable Life Assurance Soc'y, No. 97-CV-5711, 1999 WL 219786, at *3 (E.D. Pa. Apr. 12, 1999)).

Aspen contends that it is entitled to summary judgment because there is no coverage for the improvements under the Policy; and even if there is coverage, it had a reasonable basis for its denial. Def. S.J. Mot. at 13-25. Ranlud argues Aspen acted in bad faith by failing to conduct a proper investigation and lacking a reasonable basis to determine Ranlud had no insurable interest and. Pl. S.J. Mot. at 13-25. Ranlud lacks clear and convincing evidence that Aspen investigated and handled the claim in bad faith or denied coverage without a reasonable basis.

Immediately after the fire, Aspen informed its adjustor, Crawford Technical Services ("Crawford"), of the claim. 5/13/19 Status Report at 3. Six days later, Crawford began

investigating the claim.  Garlena Dep. at 54:9-55:16.  Crawford also began working with Ranlud's public adjustor, Robert Landow of MLA Claims.  Id. at 54:19-55-16.  Crawford obtained and reviewed Chevra's Lease.  Urgo Dec., Ex. 10, Landow Dep. at 80:2-81:17; Garlena Dep. at 57:12-17, 273:6-275:2.  Landow and Garlena agreed to adjust the claim in phases, prioritizing matters such as re-starting the electrical system and repairing sprinklers.  Landow Dep. at 95:8-24.  They maintained communication about Aspen's advancement, and Garlena asked Landow when Crawford could expect a claim for building repairs.  Urgo Dec., Ex. 22, 5/6/19 Letter; Ex. 23, 5/15/19 Letter; Ex. 24, 6/20/19 Letter.  Garlena also worked with Chevra's insurer, Hartford Insurance.  Levin Dec., Ex. 13, 3/11/19 Status Report at 7.

In a May 6, 2019 status report to Aspen, Garlena noted that although Chevra "did much more carpentry in the demised premises, [Landow] argues only the floor coverings and wall fixtures will be [Chevra's] responsibility."  Levin Dec., Ex. 14, 5/6/19 Status Report at 5.  Garlena recommended Aspen reserve $75,000 for the claim.  Levin Dec., Ex. 16, 5/6/19 Email.  On May 13, 2019, Garlena requested authorization from Aspen to provide an advance of $250,000 to Ranlud to cover the following costs: All Risk Board Up, TTI Environmental, All Risk Joint Replacement, basement repairs, and floors 1-4 "until we receive repair estimates, establish insured responsibility and arrive at an agreed scope of loss."  5/13/19 Status Report at 7-10.

After reviewing documentation in Philadelphia's Licensing and Permits Division showing the extent of Chevra's renovations, Garlena informed Ranlud on September 4, 2019 that Aspen "would not make any payment for the work taking place in the basement" until Ranlud provided "a complete description of work that took place after the lease was signed;" and any plans describing the work in progress so that Aspen could "have a clear assessment of insured

8

versus tenant responsibility in the basement."[4]  Levin Dec., Ex. 15, 9/4/19 Letter at 2-3.  Landow responded to Garlena, alleging that Garlena had "the aforementioned renovation information verbally from the beginning of the claims process."  Urgo Dec., Ex. 27, 9/5/19 Email.  Landow claimed that Garlena should have known Chevra's involvement in its renovations from the architectural floor plans and his communications with Hartford.  Id.  Garlena recommended that Aspen conduct examinations under oath of Ranlud's agents and request additional documents to adjust the claim.  Levin Dec., Ex. 17, 9/4/19 Email.

After conducting examinations under oath of Vinokur and Ranlud employee Neil Klinger, Aspen sent its letter denying the coverage for the improvements done by Chevra.  Declination Letter at 8-9.  On April 8, 2020, Ranlud's counsel requested that Aspen's counsel "please provide a reasonable explanation for the basis in the insurance policy in relation to the facts and the law for Aspen's partial coverage denial and refusal to pay the disputed portion of Ranlud's claim."  Levin Dec., Ex. 20, 4/8/20 Letter.  On May 20, 2020, Aspen's counsel replied, attaching an estimate for insured responsibility work "based in information provided and per coverage position letter."  Urgo Dec., Ex. C, 5/20/20 Email at 6-55.

Aspen's ongoing investigation of the claim constituted a reasonable basis for the seven-month delay between claim filing and coverage decision.  Its delay in denying coverage fails to establish "clear and convincing evidence" by which a reasonable jury could find bad faith. See Williams, 83 F. Supp. at 572 (granting insurer's summary judgment on bad faith in an insurance settlement fifteen months after the claim was filed); Eastern, LLC v. Travelers Casualty Insurance Company of America, No. 19-5283, 2020 WL 5534060, at *3-4 (E.D. Pa. Sep. 15,

---

[4] Landow did not provide a repair estimate earlier based on the Garlena and Landow's "general agreement on how [they] were handling the claim."  Landow Dep. at 110:24-111:9.

2020) (granting insurer's summary judgment on bad faith for a five-month period between claim filing and decision of denial); Seto v. State Farm Ins. Co., 855 F. Supp. 2d 424, 430 (W.D. Pa. 2012) (granting insurer's summary judgment on bad faith for twelve-month delay between insurer receiving damage estimate and responding to the estimate).  Aspen's delay was supported by a reasonable basis, which may include active engagement in "investigation, valuations, and negotiations."  Seto, 855 F. Supp. at 430.

Although Aspen incorrectly denied coverage, that fails to constitute bad faith.  See J.C. Penney, 393 F.3d at 367 (3d Cir. 2004) (affirming bad faith summary judgment in favor of insurer despite creating "an appearance of bad faith").  Because Pennsylvania courts have held that insurable interest is generally decided by the jury, Alberici, 664 A.2d at 113, and there was testimony from Vinokur contradicting Ranlud's expectation of benefit from the improvements, Aspen had sufficient reasonable basis to support its coverage decision.  As my analysis demonstrates, the existence of an insurable interest as a matter of law is a close question subject to reasonable debate.

I grant Aspen's motion for summary judgment on bad faith, and I deny Ranlud's summary judgment motion on bad faith.

An appropriate Order accompanies this Opinion.